UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KWOK FAI LI,

           Petitioner,

   v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

           Respondents.

Case No. C19-2015-RAJ-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, a citizen of Hong Kong, is currently detained at the Northwest Detention Center in Tacoma, Washington, by U.S. Immigration and Customs Enforcement ("ICE"). Through counsel, he filed the instant 28 U.S.C. § 2241 habeas petition and a motion for an emergency restraining order commanding his immediate release so that he may return home to Hong Kong. (Dkt. ## 1, 2.) The Government opposes his motion, arguing that he is properly detained pending his removal to Hong Kong. (Dkt. # 5.) At the Court's direction, Petitioner filed a reply. (*See* Dkt. ## 7, 8.) Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Petitioner's motion be DENIED.

REPORT AND RECOMMENDATION - 1

## II.     BACKGROUND

On December 3, 2019, Petitioner applied for admission to the United States at the SeaTac International Airport with a B1/B2 visitor visa.[1] (*See* Dkt. 6-1.) As an applicant for admission, Petitioner bore the burden of proving he was not inadmissible. *See Nguyen v. Sessions*, 901 F.3d 1093, 1096 (9th Cir. 2018) ("An 'applicant for admission' bears the burden of proving he is not inadmissible under 8 U.S.C. § 1182."); 8 U.S.C. § 1182(a) ("Except as otherwise provided in this chapter, [noncitizens] who are inadmissible under the following paragraphs are ineligible . . . to be admitted to the United States.").

A U.S. Customs and Border Protection ("CBP") officer referred Petitioner for secondary inspection where he had a lengthy interview, through an interpreter, in which he admitted he has two U.S. citizen children, ages eight and nine; he owns a Hong Kong company that does real estate development in the United States and has a branch in this country; one of his children lives in Washington State in a house his company rents for him; he has spent nine months of 2019 in the United States and planned to stay for an additional two to four weeks on this trip; he did not have a return ticket to leave the United States; and he used to have work authorization under an L2 visa (spouse of an intracompany transferee with an L1 visa) but did not renew it after it expired on January 19, 2019. (*See* Dkt. # 6-1.) Petitioner provided additional information regarding his business and work in the United States, and based on the information provided, the inspecting CBP officer concluded that he required an L1 visa (intracompany transferee) for the work he intended to perform and that he was inadmissible. (*Id.* at 7-8.) The CBP officer asked whether Petitioner would voluntarily withdraw his application for admission in lieu of formal

---

[1] B1 visas are for temporary business visits, and B2 visas are for temporary visits for pleasure.

removal[2]; Petitioner agreed and stated he would return to Hong Kong on the first available flight. (*Id.* at 8.) The CBP officer then asked whether Petitioner had any fear or concern about being returned to Hong Kong or being removed from the United States. (*Id.*) According to the CBP officer's records, Petitioner responded:

> I am worried that if I am denied from entering the country under these conditions it will look bad. I am scared the local government will think that I did something wrong and that it will affect my undertakings for my business. Because the political status in Hong Kong is really unstable right now so if I return to the country under these circumstances I will be very scared.

(*Id.*) The CBP officer then asked if Petitioner would be harmed if he was returned to Hong Kong, and her notes indicate the following response:

> I think yes, it would have a really bad effect on me. In Hong Kong, there are 2 types of people, ones that really like the U.S. and some that really hate the U.S. so if I was to let these people [know] that I invested in the U.S. it would cause a bad problem for me as there are people hurting people on the street.

(*Id.*) The CBP officer informed Petitioner that because he expressed a fear of returning to Hong Kong, he would be detained pending an interview with an asylum officer. (*Id.*) Following the interview, the CBP officer issued a Notice and Order of Expedited Removal, finding that at the time Petitioner applied for admission, he did not have valid entry documents. (Dkt. 6-2.)

---

[2] The regulation governing withdrawal of an application for admission provides:

> The Attorney General may, in his or her discretion, permit any [noncitizen] applicant for admission to withdraw his or her application for admission in lieu of removal proceedings under section 240 of the Act or expedited removal under section 235(b)(1) of the Act. The [noncitizen's] decision to withdraw his or her application for admission must be made voluntarily, but nothing in this section shall be construed as to give [a noncitizen] the right to withdraw his or her application for admission. Permission to withdraw an application for admission should not normally be granted unless the [noncitizen] intends and is able to depart the United States immediately. [A noncitizen] permitted to withdraw his or her application for admission shall normally remain in carrier or Service custody pending departure, unless the district director determines that parole of the [noncitizen] is warranted in accordance with § 212.5(b) of this chapter.

8 C.F.R. § 235.4.

REPORT AND RECOMMENDATION - 3

1    On December 8, 2019, an asylum officer interviewed Petitioner by phone, and Petitioner
2 stated that he had not asked for and was not requesting asylum. (*See* Dkt. # 8 at 9.)
3    On December 10, 2019, Petitioner initiated the instant action and filed the motion for
4 emergency restraining order that is currently before the Court. (Dkt. ## 1, 2.) In his habeas
5 petition, he alleges that the immigration agencies have erroneously applied and substantially
6 ignored the requirement that an applicant for admission be interviewed in his chosen language by
7 a competent translator. (Dkt. # 1 at 6.) He alleges that he never requested asylum and was
8 "victimized by an incompetent Mandarin language translator." (*Id.* at 3.) He complains that even
9 now that ICE is aware he never requested asylum, he is still subject to detention. (*Id.* at 7.) As
10 relief, he seeks his immediate release so that he may be permitted to return to Hong Kong. (*Id.* at
11 14.) He seeks the same relief through his motion for an emergency restraining order. (*See* Dkt. #
12 2.)
13    On December 12, 2019, the Government filed an opposition to his motion for a
14 restraining order, arguing that he is lawfully detained while ICE works to execute his expedited
15 removal order. (Dkt. # 5.) At the Court's direction, Petitioner filed a reply. (Dkt. # 8.)

### III.   DISCUSSION

17 Petitioner seeks an "emergency restraining order," which the Court construes as a request
18 for a temporary restraining order. To obtain such an order, a party must demonstrate: (1) a
19 likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of
20 preliminary relief; (3) that the balance of equities tips in his favor; and (4) an injunction is in the
21 public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also*
22 *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (same
23 substantive standard applies to temporary restraining orders and preliminary injunctions). In

most cases, Ninth Circuit law also allows for satisfaction of the first and third elements outlined in *Winter* by raising serious questions going to the merits of the moving party's case and a balance of hardships that tips sharply in the moving party's favor. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011) (adding that plaintiff must also show a likelihood of irreparable injury and that the injunction is in the public interest).[3] This is not the case here, however, because Petitioner seeks a mandatory injunction. "A mandatory injunction orders a responsible party to take action [and] goes well beyond simply maintaining the status quo . . . ." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation and citation omitted). As such, it is "particularly disfavored." *Id.* (quoted source omitted). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* (internal quotation and citation omitted). To obtain a mandatory injunction, the moving party must establish that "the law and facts clearly favor [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (describing burden as "doubly demanding").

Petitioner argues that because he is not requesting asylum, "the likelihood of his successfully being eventually released—perhaps in two weeks or a month—is almost certain." (Dkt. # 2.) In his reply, he emphasizes that CBP erroneously determined that he sought asylum and therefore erroneously detained him rather than allowing him to voluntarily withdraw his application for admission. (*See* Dkt. # 8.) He takes issue with the fact that the CBP officer's

---

[3] The decision in *Winter* overruled Ninth Circuit law permitting a party to obtain a preliminary injunction merely by proving a "possibility" of irreparable harm. 555 U.S. at 22; *see also Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) ("*Winter* did not change the requisite showing for any individual factor [in the preliminary injunction analysis] other than irreparable harm.").

interview notes are not a verbatim transcript of the interview and argues that the CBP officer led him into statements that would allow her to detain him, effectively entrapping him. (*Id.* at 3-4, 7.) He contends that he unambiguously accepted the offer to withdraw his application for admission and then was arbitrarily detained after responding to a general question about the current political chaos in Hong Kong. (*Id.* at 9.) He asserts that detaining him "for weeks while a slow-moving, overburdened, and uncaring administrative bureaucracy puts him on 'the next available flight' is a shameful embarrassment to the U.S." (*Id.* at 10.)

Petitioner's argument that he will eventually be released is not responsive to the relevant legal question—whether the law and facts clearly establish that the Court has the authority to order his immediate release and should do so. As the Government points out, Petitioner is subject to an expedited removal order under 8 U.S.C. § 1225(b)(1). Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order. 8 U.S.C. § 1225(b)(1)(A)(i). If, however, a § 1225(b)(1) noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," the inspecting immigration officer must refer the noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If the officer determines the noncitizen does not have a credible fear of persecution, "the official shall order the [noncitizen] removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I). Any noncitizen referred for a credible fear interview "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Because Petitioner has no credible fear of persecution, his continued detention pending his removal is mandated by statute. Petitioner complains that the CBP officer erroneously referred him for an asylum interview, but he cites no authority establishing that such

an error entitles him to immediate release. He also fails to cite any authority entitling him to withdraw his application for admission. Indeed, the regulation governing withdrawal of applications for admission states that "nothing in this section shall be construed as to give [a noncitizen] the right to withdraw his or her application for admission." 8 C.F.R. § 235.4. Petitioner has not shown that the law and facts clearly favor his position that the Court may order his immediate release, and his motion for an emergency restraining order should be denied.

### IV.    CONCLUSION

The Court recommends that Petitioner's motion for an emergency restraining order (dkt. # 2) be DENIED and that this action be RE-REFERRED to the undersigned for further proceedings. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on January 3, 2020.

Dated this 19th day of December, 2019.

_____
MICHELLE L. PETERSON
United States Magistrate Judge